IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Gregory Hopfinger, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) C.A. No. 3:18-cv-257 |
| City of Nashville, Illinois and | ) **JURY TRIAL DEMANDED** |
| Brian Fletcher, | ) |
| | ) |
|     Defendants. | ) |

# COMPLAINT

## I. Introduction

1. Greg Hopfinger brings this action under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 against the City of Nashville and, individually, against Brian Fletcher. Plaintiff also brings supplemental state law claims against both defendants. Plaintiff, who worked in the Nashville, Illinois police department, expressed his opposition to a number of Fletcher's acts—raising matters of public concern—to the Mayor of Nashville and two members of the Nashville City Council. Plaintiff's opposition to Fletcher's conduct was not part of a board meeting or otherwise part of the job duties he was expected to perform. Thus plaintiff was speaking as a citizen about these matters of public concern. Plaintiff alleges defendants retaliated against him because of his speech.

## II. Jurisdiction and Venue

2. This court has jurisdiction over Count I and II based on 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) as this is an action under 42 U.S.C. § 1983 to enforce plaintiff's rights under the First Amendment to the United States Constitution. This court has jurisdiction

over Counts III-VIII based on 28 U.S.C. § 1367 (supplemental jurisdiction) as plaintiff's claims in Counts III-VIII are so related to his claim in Counts I and II that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391(b) as the acts were committed within the jurisdiction of this court.

### III. Parties

4. Plaintiff, Gregory Hopfinger, is a citizen of Nashville, Illinois, and a former employee of the City of Nashville, where he worked in the Police Department.

5. Defendant City of Nashville is a municipality within the State of Illinois.

6. Defendant Brian Fletcher is the Chief of Police for the Police Department of the City of Nashville, Illinois.

### IV. Factual Allegations

7. Plaintiff began working for the Nashville Police Department on a part-time basis in 2001.

8. Plaintiff became a full-time police officer for the Nashville Police Department in 2010.

9. When plaintiff became a full-time police officer, he was a private.

10. Within a year after hiring plaintiff as a full-time officer, Nashville promoted plaintiff to lieutenant.

11. As a lieutenant, plaintiff reported to Fletcher, who was the Chief of Police.

12. Plaintiff's employment was governed by chain-of-command procedures, requiring him to report department-related issues to his supervisor, the Chief and no higher. As set forth in Section 3-5.210 of the Department's Policy Manual, "The Department is an organization with a clearly defined hierarchy of authority."

13. Under Policy Number R023 of the Policy Manual, only the Chief of Police was responsible for reporting to the City Council.

14. In February 2017, Nashville's mayor was Raymond Kolweier.

15. In February 2017, two members of the city council, Josh Fark and Eric Rolf, along with Mayor Kolweier, came to the Police Department to deal with a union grievance. Plaintiff was not a part of the union.

16. Plaintiff sat in on the grievance meeting so he could talk to the three city officials later.

17. After the city council members and mayor heard the officers' grievance, plaintiff asked the officers to leave. Plaintiff wanted to speak to the two city council members and the mayor privately.

18. During this meeting with Fark, Rolf, and the mayor, plaintiff reported many issues including the following which violate law or regulation as set forth in the subparagraphs below:

   a. Fletcher falsified the Department's State Firearms Qualifications records.

      i. As a matter of State Policy, Nashville Police Officers needed to undergo continual training to promote and protect the citizen health, safety, and welfare, including firearms training. 50 ILCS 705, et seq., Police Training Act.

      ii. In the Police Training Act, the legislature created the Illinois Law Enforcement Training Standards Board that sets training standards for officers. 50 ILCS 710/2.5.

      iii. The Board requires annual recertification with a specified score under specified conditions. 20 Ill. Adm. Code 1730.20(b) and Appendix A.

   b. Fletcher failed to recertify for his firearm qualification annually.

    i. The statute setting forth Illinois public policy and the regulations are set forth in Paragraph 18 (a).

  c. Fletcher failed to accrue the required amount of training for state certification.

    i. 50 ILCS 705/10.7 requires police chiefs to obtain at least 20 hours of training each year.

  d. Fletcher charged the purchase of books to the City, "Deskbook Encyclopedia of Public Employment Law" and "Public Employment Law Report" and did not pay the bills, so the City was being placed in collection.

    i. As a matter of state policy, debts are to be reviewed within 30 days and paid 30 days thereafter. 50 ILCS 505.

    ii. Upon information and belief, Fletcher ordered and failed to pay for the books in violation of the Illinois statutes as the original invoice came in July 2016 and the matter was still in collection in March 2017.

  e. Fletcher appeared to have misappropriated donated funds. A women donated cash to the Department for the benefit of the officers—in memory of fallen officers. The cash was given to Fletcher and the cash appeared to be missing.

    i. Public corruption violates the public policy of the State of Illinois as expressed in the Public Corruption Profit Forfeiture Act, 5 ILCS 283/1, et seq.

    ii. Theft violates the public policy of the State of Illinois.

    iii. Official misconduct violates 720 ILCS 5/33-3, et seq. and includes the prohibition on performing an act an officer knows he is forbidden by law to perform and, with the intent to obtain a personal advantage, performs an act in excess of his lawful

  authority.

 f. Fletcher appeared to have allowed the Department's asset forfeiture program to become non-complaint with the United States Department of Justice's Asset Forfeiture Program. Plaintiff showed the two city councilmen and the mayor a December 2016 email from the Department of Justice notifying the City that its program was placed in non-compliant status;

 g. An officer had gotten drunk and passed out in a McDonald's drive-thru. The officer who responded to the call allowed the first officer to drive home and did not record the incident in the LAWMAN System.

 h. Fletcher improperly denied pay to an officer called in to work on a day off.

  i. The Illinois Wage Payment and Collection Act requires employees to be paid for the time they work. 820 ILCS 115, et seq.

 i. Fletcher paid overtime to an officer who did not earn it.

  i. Under 720 ILCS 5/33-3, it is "official misconduct" for a public officer or employee to knowingly perform an act which he knows he is forbidden by law to perform.

 j. Fletcher worked less than a 40-hour week, when it appeared he was not taking leave for his time off.

  i. Under 720 ILCS 5/33-3, it is "official misconduct" for a public officer or employee to knowingly perform an act which he knows he is forbidden by law to perform and to intentionally or recklessly fail to perform mandatory duties required by law.

    k.  Fletcher failed to report and record in LAWMAN an incident involving a high school student who was robbed at gunpoint;

    l.  Issues relating to the Chief not following-up with citizens and requesting police assistance.

        i.  Under 720 ILCS 5/33-3, it is "official misconduct" for a public officer or employee to knowingly perform an act which he knows he is forbidden by law to perform and to intentionally or recklessly fail to perform mandatory duties required by law.

    m.  Fletcher assigned officers to help him with a personal task—moving furniture—instead of having them perform their regular duties which involved attending to the crosswalk at an elementary school.

        i.  Under 720 ILCS 5/33-3, it is "official misconduct" for a public officer or employee to knowingly perform an act which he knows he is forbidden by law to perform and, with the intent to obtain personal advantage for himself or another, perform an act in excess of his lawful authority.

    n.  Fletcher attempted to use his influence to get a ticket dropped for a friend.

        i.  Under 720 ILCS 5/33-3, it is "official misconduct" for a public officer or employee to knowingly perform an act which he knows he is forbidden by law to perform and, with the intent to obtain personal advantage for himself or another, perform an act in excess of his lawful authority.

19.  No Nashville policies or procedures governing plaintiff called for plaintiff to report the type of conduct described in Paragraph 18 to the city council or to the mayor.

20. The issues described in Paragraph 18, above, were matters of public concern in that they concerned the citizens of the community or involved public-corruption.

21. Plaintiff had complained before to Chief Fletcher about many incidents described in Paragraph 18, above, or others involving one of the same officers at around the time of their occurrence. For example,

    a. In around November 2016, plaintiff complained to Fletcher about the Department's violation of the Department of Justice's asset forfeiture rules.

    b. In around September 2016, plaintiff complained to Fletcher that a particular officer came up with a sexually-suggestive name, "Harry Bush," found a matching license plate from Chicago, and thereby forced Dispatch to say the name over the air, wasting resources and possibly causing the innocent person in Chicago to be stopped.

    c. In around September 2016, plaintiff complained to the Chief that this same officer had repeatedly shoved a Dispatcher's head and neck down to a table.

    d. In around October 2016, plaintiff complained to the Chief that this same officer told Dispatch that she had refused a call saying she was not taking that "fucking" call.

    e. In 2016, plaintiff also complained to the Chief about another officer's failure to report to work after logging onto LAWMAN.

22. In November 2016, after plaintiff made several complaints to Fletcher, Fletcher told former-Chief Dick Shew that plaintiff was a thorn in his side and that he [Fletcher] needed to do something with plaintiff.

23. After plaintiff's February 2017 complaints to Fark, Rolf, and Mayor Kolweier, plaintiff continued to complain about matters of public concern. In around March 2017, plaintiff com-

plained to Rolf and Fark that Fletcher failed to register a particular sex offender who repeatedly tried to comply with state law by presenting himself at the Police Department for annual registration. The law requiring sex offenders to register, the Sex Offender Registration Act, 730 ILCS 150/6 also required the police departments to forward sex offender registration forms to the Attorney General. In failing to allow the particular offender to register, plaintiff reasonably believed Fletcher was violating the law.

24. In March 2017, Fark summoned plaintiff to a meeting with Fletcher, Rolf, and the Mayor. The Mayor said that plaintiff brought issues to their attention and that plaintiff and the Chief had to start working together and get on the same page. The Mayor said that plaintiff and the Chief had to meet once a day to start working on the issues. Fletcher said he would meet with plaintiff later in the week. Fletcher did not contact plaintiff for a meeting and despite plaintiff's repeated attempts to schedule the meeting, the later-in-the-week meeting between plaintiff and Fletcher never happened.

25. Upon information and belief, Fletcher was having the Department's officers monitor plaintiff's time through the LAWMAN system.

26. From the March 2017 meeting to plaintiff's discharge, Fletcher rarely spoke to plaintiff.

27. In around July 2017, Fletcher called plaintiff and told him he did not trust him any more.

28. In July 2017, Officer Brian Wetzel told plaintiff that the Chief was trying to fire him (plaintiff) and trying to get the Mayor on board.

29. On August 22, 2017, Fletcher handed plaintiff a letter telling him his employment was terminated. A copy of the letter is attached as Exhibit 1.

30. On August 26, 2017, in response to a question about the reason for plaintiff's firing,

Fletcher told multiple people at a bar in Nashville, Illinois—the Fuzzy Duck—that the reason was bad and it was "criminal." Fletcher's statement was not true.

## Count I

### 42 U.S.C. § 1983 and First Amendment against City of Nashville and Brian Fletcher in his individual capacity

31. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

32. Defendants fired plaintiff in retaliation for his exercise of his First Amendment right of free speech, that is, his right to speak about matters of public concern, as described in Paragraphs 18 and 23.

33. Defendants' violation of plaintiff's First Amendment rights was willful, wanton, and malicious or in reckless disregard of plaintiff's federally-protected rights.

34. As a direct and proximate result of defendants' conduct, plaintiff has been damaged in that he has lost the benefits of full employment, including wages and benefits, and he has suffered humiliation, embarrassment, loss of enjoyment of life, and the damages a person would reasonably suffer as a violation of his First Amendment Rights.

WHEREFORE, plaintiff asks for judgment in his favor and against defendant City of Nashville, Illinois in an amount to be established at trial for compensatory and punitive damages, attorneys' fees, and such further relief as the court considers appropriate.

## Count II

### 42 U.S.C. § 1983 and First Amendment against Brian Fletcher, in his individual capacity

35. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

36. Defendant fired plaintiff in retaliation for his exercise of his First Amendment right of free speech, that is, his right to speak about matters of public concern, as described in Paragraphs

18 and 23.

37. Defendant's violation of plaintiff's First Amendment rights was willful, wanton, and malicious or in reckless disregard of plaintiff's federally-protected rights.

38. As a direct and proximate result of defendants' conduct, plaintiff has been damaged in that he has lost the benefits of full employment, including wages and benefits, and he has suffered humiliation, embarrassment, loss of enjoyment of life, and the damages a person would reasonably suffer as a violation of his First Amendment Rights.

WHEREFORE, plaintiff asks for judgment in his favor and against Brian Fletcher in an amount to be established at trial for compensatory and punitive damages, attorneys' fees, and such further relief as the court considers appropriate.

## Count III

### Breach of Contract against City of Nashville

39. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

40. Defendant City of Nashville distributed its Police Department Policy Manual ("Manual") to the police officers in the Nashville Police Department.

41. The Manual contains no disclaimers on the representations or promises made in the Manual.

42. Defendant City gave plaintiff the Manual and intended that he become familiar with its terms.

43. Plaintiff continued to work with knowledge of the Manual.

44. Policy Number R025 in the Manual provides, about Suspension, Removal, or Discharge: Accordance with 65 ICLS [sic] Section 5/10-1-18 of the Illinois Municipal Code, which is in-

cluded with the Manual. A copy of Policy Number R025 is attached as Exhibit 2 and a copy of 65 ILCS 5/10-1-18(b) is attached as Exhibit 3.

45. The portion of 65 ILCS 5/10-1-18(b) that applies to cities of fewer than 500,000 people, such as Nashville, provides that "no officer . . . may be removed or discharged or suspended for a period of more than 5 calendar days except upon written charges and after an opportunity to be heard in his own defense."

46. The City fired plaintiff without providing him with written charges and an opportunity to be heard, breaching the Manual.

47. As a direct and proximate result of the City's breach, plaintiff has been damaged in that he has lost wages and other benefits of employment with the City.

WHEREFORE, plaintiff asks for judgment in his favor and against the City of Nashville in an amount to be established at trial for his damages resulting from the City's breach of its agreement with plaintiff, plus costs, and such further relief as the court considers appropriate.

## Count IV

### Illinois Whistleblower Act against City of Nashville

48. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

49. Under the Illinois Whistleblower Act, 740 ILCS 174/15 (b) it is unlawful for an employer to retaliate against an employee for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

50. Section 20.1 of the Whistleblower Act provides that any other act or omission, even if not otherwise listed in the Act, "also constitutes retaliation by an employer . . . if the act or omis-

sion would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing."

51. The City of Nashville is an employer under the Whistleblower Act, 740 ILCS 174/5 as it is a "unit of local government."

52. Defendant City of Nashville violated the Whistleblower Act by:

    a. firing plaintiff because he reported to government officials, that is Fletcher, the city councilmembers, and the mayor, the matters described above in Paragraphs 18, 21, and 23, which plaintiff had reasonable cause to believe violated state or Federal law, rule, or regulation as set forth in those Paragraphs.

    b. firing plaintiff because he disclosed public corruption or wrongdoing.

    c. when its Chief of Police told patrons at the Fuzzy Duck that the city fired plaintiff for criminal reasons.

53. As a direct and proximate result of the defendant's violation of the Whistleblower Act, plaintiff has been damaged in that he has lost wages and other benefits of employment with the City and he has suffered humiliation, embarrassment, and loss of enjoyment of life.

WHEREFORE, plaintiff asks for judgment in his favor and against the City of Nashville in an amount to be established at trial for his damages resulting from the City's breach of its agreement with plaintiff, plus litigation costs, recoverable fees and such further relief as the court considers appropriate.

## Count V

### Illinois Whistleblower Act against Brian Fletcher

54. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

55. Under the Illinois Whistleblower Act, 740 ILCS 174/15 (b) it is unlawful for an employer to retaliate against an employee for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

56. Section 20.1 of the Whistleblower Act provides that any other act or omission, even if not otherwise listed in the Act, "also constitutes retaliation by an employer . . . if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing."

57. At the time of plaintiff's discharge, Brian Fletcher was an employer under the Whistleblower Act, 740 ILCS 174/5, in that he was a person acting within the scope of his authority express or implied on behalf of the City in dealing with plaintiff.

58. Defendant Brian Fletcher violated the Whistleblower Act by:

    a. firing plaintiff because he reported to government officials, that is Fletcher, the city councilmembers, and the mayor, the matters described above in Paragraphs 18, 21, and 23, which plaintiff had reasonable cause to believe violated state or Federal law, rule, or regulation as set forth in those Paragraphs.

    b. firing plaintiff because he disclosed public corruption or wrongdoing.

    c. when Fletcher told patrons at the Fuzzy Duck that the city fired plaintiff for criminal reasons.

59. As a direct and proximate result of the defendant's violation of the Whistleblower Act, plaintiff has been damaged in that he has lost wages and other benefits of employment with the City and he has suffered humiliation, embarrassment, and loss of enjoyment of life.

WHEREFORE, plaintiff asks for judgment in his favor and against the City of Nashville in an amount to be established at trial for his damages resulting from the City's breach of its agreement with plaintiff, plus litigation costs, recoverable fees and such further relief as the court considers appropriate.

## Count VI

### Illinois Retaliatory Discharge against City of Nashville

60. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

61. Defendant City of Nashville's discharge of plaintiff violated the public policy of the State of Illinois as expressed in its statutes described above in Paragraphs 18, 21, and 23, as well as 740 ILCS 174 20.1, which makes it the public policy of the State not to take adverse actions against employees who report attempt to expose public corruption and 50 ILCS 135/1, et seq., the Local Governmental Employees Political Rights Act, which prohibits local governments from inhibiting others from speaking out on questions of public policy.

62. Nashville's retaliatory violation of plaintiff was willful, wanton, and malicious.

63. As a direct and proximate result of the defendant's retaliatory discharge, plaintiff has been damaged in that he has lost wages and other benefits of employment with the City and he has suffered humiliation, embarrassment, and loss of enjoyment of life.

WHEREFORE, plaintiff asks for judgment in his favor and against the City of Nashville in an amount to be established at trial for compensatory and punitive damages and such further relief as the court considers appropriate.

## Count VII

### Defamation Per Se against Brian Fletcher

64. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

65. In August 2016, Brian Fletcher made statements about plaintiff: that the reason for firing plaintiff was bad and that it was criminal.

66. Fletcher's statements about plaintiff were not true.

67. Fletcher's statements about plaintiff impugned plaintiff's his competency in his profession, that of police lieutenant, or imputed the commission of a criminal offense. Thus, injury to plaintiff's reputation can be presumed.

68. Fletcher published the statements to others at the Fuzzy Duck.

69. Fletcher's defamatory conduct was willful, wanton, and malicious.

WHEREFORE, plaintiff asks for judgment in his favor and against Fletcher for compensatory damages and punitive damages and such further relief as the court considers appropriate.

## Count VIII

### Defamation Per Se against City of Nashville

70. Plaintiff incorporates Paragraphs 1 through 30 as though fully set forth here.

71. Pleading in the alternative, acting within the scope of his authority as a Nashville employee, the Chief of Police, in August 2016, Brian Fletcher made statements about plaintiff: that the reason for firing was bad and that it was criminal.

72. Fletcher's statements about plaintiff were not true.

73. Fletcher's statements about plaintiff impugned his competency in his profession or imputed the commission of a criminal offense. Thus, injury to plaintiff's reputation can be pre-

sumed.

74. Fletcher published the statements to others at the Fuzzy Duck.

75. Fletcher's defamatory conduct was willful, wanton, and malicious.

WHEREFORE, plaintiff asks for judgment in his favor and against the City of Nashville for compensatory damages and punitive damages and such further relief as the court considers appropriate.

/s/ Ferne P. Wolf
SOWERS & WOLF, LLC
D. Eric Sowers
es@sowerswolf.com
Ferne P. Wolf
fw@sowerswolf.com
Jill A. Silverstein
js@sowerswolf.com
Joshua M. Pierson
jp@sowerswolf.com
530 Maryville Centre Dr., Suite 460
St. Louis, MO 63141
Phone: (314) 744-4010
Facsimile: (314) 744-4026